1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

              Plaintiff,

              v.

JAQUAN JACKSON,

              Defendant.

Case No. CR22-37RSL

ORDER DENYING
DEFENDANT'S MOTION
TO DISMISS INDICTMENT

      This matter comes before the Court on defendant's "Motion to Dismiss the Indictment for Unconstitutionality" (Dkt. # 67). Having reviewed the submissions of the parties and the remainder of the record, the Court finds as follows:

## I.    Government's Motion for Overlength Brief

      As an initial matter, the Court GRANTS the government's motion to file a brief in excess of twelve pages. Dkt. # 70.

## II.    Background

      On March 16, 2022, a federal grand jury returned an indictment charging defendant with a single count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Dkt. # 1. Defendant now moves this Court to dismiss the indictment, arguing that § 922(g)(1) violates the Second Amendment under the Supreme Court's recent decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022).

      Defendant argues that *Bruen* "compels the conclusion that § 922(g)(1) impermissibly infringes upon the Second Amendment right to lawful self-defense." Dkt. # 67 at 3. Specifically,

ORDER DENYING DEFENDANT'S MOTION TO
DISMISS INDICTMENT - 1

he contends that *Bruen* (1) abrogates the Ninth Circuit's means-end test for firearm regulations and assumptions that certain types of regulations are constitutional and (2) shows that § 922(g)(1) violates the Second Amendment because defendant's "conduct triggers the Amendment's plain text" and "the government cannot meet its burden to show that § 922(g)(1) complies with the Nation's tradition of firearm regulation." Dkt. # 67 at 3-4. The government responds that Ninth Circuit law upholding the constitutionality of the statute remains controlling law after *Bruen* and, even if the statute were unconstitutional as applied to differently situated defendants, it is constitutional as applied to defendant. Dkt. # 71 at 2.

Rule 12(b)(1) of the Federal Rules of Criminal Procedure provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." A pretrial motion is proper when "it involves questions of law rather than fact." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986) (internal citations omitted). Accordingly, the Court addresses defendant's challenge to § 922(g)(1) below.

### III.   Felon in Possession Laws and the Second Amendment

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. In *District of Columbia v. Heller*, the Supreme Court held that the right to "keep and bear arms" is an individual right. 554 U.S. 570, 573-626 (2008). However, the Court noted that, like other individual rights, "the right secured by the Second Amendment is not unlimited." *Id.* at 626. Most notably for this Order, the Court explicitly cautioned that "nothing in [*Heller*] should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Id.* Indeed, the Court described such restrictions as "presumptively lawful regulatory measures." *Id.* at 627 n.26.

The Court re-emphasized this holding in two years later in *McDonald v. Chicago*,[1] stating:

---

[1] In *McDonald v. Chicago*, the Court concluded that the Fourteenth Amendment incorporates the Second Amendment right, recognized in *Heller*, to keep and bear arms for the purpose of self-defense. 561 U.S. 742.

> We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as "prohibitions on the possession of firearms by felons and the mentally ill," "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." We repeat those assurances here.

561 U.S. 742, 786 (2010) (internal citations omitted).

With these pronouncements in mind, the Court turns to the text of the challenged statute, § 922(g)(1), which reads:

> It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1). Defendant is not the first to argue that this statute violates his Second Amendment rights. In *United States v. Vongxay*, defendant Peter Vongxay appealed his conviction for felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), challenging his conviction on three grounds, the first of which was that, under *Heller*, § 922(g)(1) violates the Second Amendment. 594 F.3d 1111, 1113-15 (9th Cir. 2010). The Ninth Circuit interpreted *Heller* to support the conclusion that "felons are categorically different from the individuals who have a fundamental right to bear arms, and [thus] Vongxay's reliance on *Heller* is misplaced." *Id.* at 1115. The court also examined its own prior precedent, decisions from other circuits, the text of the Second Amendment, and scholarly works discussing the history of the Amendment and firearms regulations in the United States more broadly. *Id.* at 1116-18. Concluding that these sources supported the constitutionality of § 922(g)(1), the Ninth Circuit held "that § 922(g)(1) does not violate the Second Amendment as it applies to Vongxay, a convicted felon." *Id.* at 1118. The Ninth Circuit has since reaffirmed this holding. *See United States v. Phillips*, 827 F.3d 1171, 1175 (9th Cir. 2016) (stating that, "under Supreme Court precedent and our own," the court "must" "assum[e] the propriety of felon firearm bans"); *Van Der Hule v.*

ORDER DENYING DEFENDANT'S MOTION TO
DISMISS INDICTMENT - 3

1    *Holder*, 759 F.3d 1043, 1051 (9th Cir. 2014) ("§ 922(g)(1) continues to pass constitutional

2    muster").

3        Published decisions of the Ninth Circuit are binding on this Court. *Gonzalez v. Arizona*,

4    677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc). Thus, unless the Ninth Circuit precedent

5    discussed above is overruled, it requires denial of defendant's motion. *Id.*

6        Defendant argues that while *Vongxay* and other relevant Ninth Circuit precedent have not

7    been explicitly overruled, they fall under a "recognized exception[] to the law of the circuit

8    rule." *Id.* Specifically, the Ninth Circuit has held "where the reasoning or theory of [a] prior

9    circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher

10    authority," that precedent should be rejected as having been "effectively overruled." *Miller v.*

11    *Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc). Here, defendant argues that the reasoning

12    put forward in *Bruen* is "clearly irreconcilable" with that of the Ninth Circuit's pre-*Bruen* cases,

13    and thus those cases should be considered "effectively overruled. Dkt. # 67 at 4-11.

14        However, in applying the holding of *Miller*, the Ninth Circuit has emphasized that the

15    "clearly irreconcilable" requirement "is a high standard." *Fed. Trade Comm'n v. Consumer Def.,*

16    *LLC.*, 926 F.3d 1208, 1213 (9th Cir. 2019) (quoting *Rodriguez v. AT & T Mobility Servs. LLC*,

17    728 F.3d 975, 979 (9th Cir. 2013)). "It is not enough for there to be some tension between the

18    intervening higher authority and prior circuit precedent, or for the intervening higher authority to

19    cast doubt on the prior circuit precedent." *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1073 (9th Cir.

20    2018) (citation omitted). "So long as the court can apply [the] prior circuit precedent without

21    running afoul of the intervening authority it must do so." *Id.* (citation omitted).

22        Thus, the issue before this Court is whether *Bruen* is "clearly irreconcilable" with *Heller*

23    and pre-*Bruen* Ninth Circuit precedent relying on *Heller* that addresses the constitutionality of

24    § 922(g)(1).

25    **IV.    Ninth Circuit Precedent After *Bruen***

26        The Supreme Court built on its holdings in *Heller* and *McDonald* in *Bruen*, concluding

27    "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun

28    for self-defense outside the home." 142 S. Ct. at 2122. The Court found that New York's gun

ORDER DENYING DEFENDANT'S MOTION TO
DISMISS INDICTMENT - 4

1  licensing scheme violated this right, as the state issued "public-carry licenses only when an

2  applicant demonstrate[d] a special need for self-defense." *Id.*

3        In *Bruen*, the Court also announced the "standard for applying the Second Amendment."

4  *Id.* at 2129. In the wake of *Heller*, circuit courts had adopted a "two-step" framework "for

5  analyzing Second Amendment challenges that combine[d] history with means-end scrutiny." *Id.*

6  at 2125. The Court held that the two-step approach was "one step too many." *Id.* at 2127.

7  Instead, the Court emphasized that Second Amendment analyses should focus on history:

> In keeping with *Heller*, we hold that when the Second Amendment's plain
> text covers an individual's conduct, the Constitution presumptively protects
> that conduct. To justify its regulation, the government may not simply posit
> that the regulation promotes an important interest. Rather, the government
> must demonstrate that the regulation is consistent with this Nation's
> historical tradition of firearm regulation. Only if a firearm regulation is
> consistent with this Nation's historical tradition may a court conclude that
> the individual's conduct falls outside the Second Amendment's
> "unqualified command."

*Id.* at 2126 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)). The Court is

not convinced that the approach announced in *Bruen* is "clearly irreconcilable" with *Heller* and

the Ninth Circuit precedent that relied on *Heller* to uphold the constitutionality of § 922(g)(1).

        First, *Bruen*'s text indicates that it does not undercut *Heller*'s conclusion that regulating

the possession of firearms by felons is presumptively lawful. Indeed, the majority opinion

describes itself as "consistent with *Heller*" and "in keeping with *Heller*." *Id.* at 2122, 2126.

Furthermore, the *Bruen* opinion "describ[es] those who fall under the Amendment's aegis as

'law-abiding' citizens no fewer than twenty-one times" *United States v. Ramos*, No. CR21-

395RGK, Dkt. # 31 at 2 (C.D. Cal. Aug. 5, 2022); *see, e.g.*, *Bruen*, 142 S. Ct. at 2133

(describing part of the Second Amendment analysis as asking, "how and why the regulations

burden a *law-abiding citizen's* right to armed self-defense" (emphasis added)). The concurring

and dissenting opinions similarly indicate that the Court's conclusion in *Heller* remains

unaffected by *Bruen*. *See Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring) (stating "[n]or have

we disturbed anything that we said in *Heller* or *McDonald* . . . about restrictions that may be

ORDER DENYING DEFENDANT'S MOTION TO
DISMISS INDICTMENT - 5

imposed on the possession or carrying of guns"); *id.* at 2162 (Kavanaugh, J., concurring) (stating "as *Heller* and *McDonald* established and the Court today again explains, the Second Amendment 'is neither a regulatory straightjacket nor a regulatory blank check' . . . 'nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons'"); *id.* at 2189 (Breyer, J., dissenting) (stating "[l]ike Justice Kavanaugh, I understand the Court's opinion today to cast no doubt on" *Heller*'s holding that prohibitions on the possession of firearms by felons are presumptively lawful).

Second, while defendant argues that "*Bruen* also abrogated prior case law relying on 'presumptively lawful' exceptions to the Second Amendment," the Court is not persuaded. Dkt. # 67 at 8. Defendant argues that the "non-exhaustive list of 'presumptively lawful regulatory measures'" identified in *Heller* "included 'prohibitions on carrying concealed weapons.'" *Id.* at 9. He contends that because the *Bruen* Court then conducted an "exhaustive historical analysis" of a state licensing regime regulating both open and concealed carrying of firearms, this is conclusive evidence that "*Heller*'s preliminary list of Second Amendment exceptions do not bind future courts or prevent them from conducting a full historical review that may point to a different conclusion." *Id.* at 9-10. The Court identifies at least two problems with defendant's theory. First, the Court disagrees that "prohibitions on carrying concealed weapons" *were* part of the list of "presumptively lawful regulatory measures" identified by the *Heller* Court.[2] Thus, the

---

[2] The *Heller* opinion states:

> Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

ORDER DENYING DEFENDANT'S MOTION TO
DISMISS INDICTMENT - 6

fact that the Court later conducted a more thorough historical analysis of this type of restriction does not cast doubt on the continuing viability of the "presumptively lawful" regulations identified in *Heller*. Second, *Bruen*'s discussion of "sensitive places" regulations (another regulation that was noted as "presumptively lawful" in *Heller*) reinforces the conclusion that the Court continues to view these exceptions as enduring. *See Bruen*, 142 S. Ct. at 2133-34.

Finally, defendant argues that because *Bruen* prohibited the use of means-end analysis in the Second Amendment context, any circuit precedent that relied on such a test is "clearly irreconcilable" and thus effectively overruled. Dkt. # 67 at 4. However, in *Vongxay*, the Ninth Circuit relied on *Heller*, the text of the Second Amendment, and historical understanding to conclude that § 922(g)(1) did not violate the Second Amendment. 594 F.3d at 1116-18. At no point did the court perform a means-end analysis. *Id.* The Court acknowledges that the Ninth Circuit "recognize[d] . . . that the historical question has not been definitively resolved," 594 F.3d at 1118. However, "that limited tension between *Vongxay* and *Bruen* is not enough to find that *Bruen* 'effectively overruled' *Vongxay*." *United States v. Siddoway*, No. CR 21-205BLW, 2022 WL 4482739, at *2 (D. Idaho Sept. 27, 2022).[3]

---

554 U.S. at 626 (internal citations omitted). The structure of the paragraph clearly shows that the Court's discussion of "concealed weapons" is distinct from the list of "longstanding prohibitions" that are "presumptively lawful." *See McDonald*, 561 U.S. at 786 (citing to *Heller* and listing only the prohibitions on possession of firearms by felons and the mentally ill, laws forbidding the carrying of firearms in sensitive places, and laws impose conditions and qualifications on the commercial sale of arms as presumptively lawful); *see also* Carlton F.W. Larson, *Four Exceptions in Search of a Theory*: District of Columbia v. Heller *and Judicial Ipse Dixit*, 60 HASTINGS L.J. 1371, 1372 (2009) (calling "the exceptions in this statement the four *Heller* exceptions") (cited in Justice Breyer's dissenting opinion in *Bruen*); David B. Kopel & Joseph G.S. Greenlee, *The "Sensitive Places" Doctrine: Locational Limits on the Right to Bear Arms*, 13 CHARLESTON L. REV. 205, 207 (2018) (explaining that the "sensitive places" exception is "part of a list of three types of 'presumptively lawful regulatory measures'" announced in *Heller*) (cited in the *Bruen* majority opinion).

[3] The Court also recognizes that both a Supreme Court Justice and the Ninth Circuit have acknowledged the mixed historical evidence for "categorical, lifetime bans on firearm possession by all 'felons.'" *Phillips*, 827 F.3d at 1174 & n.2; *Bruen*, 142 S. Ct. at 2189 (Breyer, J., dissenting). Although defendant would like the Court to scrutinize the history of felon-in-possession statutes, such examination is unnecessary at this time. The Court is bound by *Vongxay* and the motion must be denied.

ORDER DENYING DEFENDANT'S MOTION TO
DISMISS INDICTMENT - 7

1
2
3
4

The Court joins with other district courts in this circuit[4] in finding that the reasoning of *Vongxay* and *Heller*—on which *Vongxay* relies—are not "clearly irreconcilable with the reasoning or theory" of *Bruen*. Accordingly, *Bruen* did not "effectively overrule" *Vongxay* and this Court is bound by *Vongxay* and its progeny. For this reason, the motion to dismiss is denied.

5

**V.    Conclusion**

6
7

For all the foregoing reasons, defendant's motion to dismiss the indictment (Dkt. # 67) is DENIED. The government's motion to file an overlength brief (Dkt. # 70) is GRANTED.

8

IT IS SO ORDERED.

9

10

DATED this 13th day of February, 2023.

11

12

13

14

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

15

16

17

18

19

20

21

22

23

24

25
26
27
28

---

[4] *See, e.g.*, *United States v. Moore*, No. CR20-747KJI (D. Or. Jan. 11, 2023); *United States v. Butts*, No. CR22-3DWM (D. Mont. Oct. 31, 2022); *United States v. Carleson*, No. CR22-32SLG (D. Alaska Oct. 28, 2022); *United States v. Siddoway*, No. CR21-205BLW (D. Idaho Sept. 27, 2022); *United States v. Hill*, No. CR21-107WQH (S.D. Cal. Sept. 20, 2022); *United States v. Nevins*, No. CR19-774DMG (C.D. Cal. Aug. 15, 2022).

ORDER DENYING DEFENDANT'S MOTION TO
DISMISS INDICTMENT - 8